UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FCA US, LLC,

      Plaintiff/Counter-Defendant,

v.                                                              Case No. 22-10609
                                                                Honorable Victoria A. Roberts
ROBERT WUBBOLTS,

      Defendant/Counter-Plaintiff.

_____/

**<u>ORDER: (1) GRANTING WUBBOLTS' MOTION TO CONFIRM
ARBITRATION AWARD [ECF No. 14]; (2) DENYING FCA'S
MOTION TO VACATE ARBITRATION AWARD [ECF No. 8];
and (3) CONFIRMING THE ARBITRATION AWARD</u>**

## I.    INTRODUCTION

Before the Court are: (1) Plaintiff/Counter-Defendant FCA US, LLC's

("FCA") motion to vacate arbitration award [ECF No. 8]; and (2) Defendant/

Counter-Plaintiff Robert Wubbolts' motion to confirm arbitration award [ECF

No. 14].  Both parties responded to the opposing party's motion.  A hearing

is unnecessary.

For the reasons below, the Court **GRANTS** Wubbolts' motion;

**DENIES** FCA's motion; and **CONFIRMS** the arbitration award.

## II.    BACKGROUND

### A.    Wubbolts' Employment With and Termination From FCA

In August 2017, Wubbolts moved to Michigan to work for FCA as a salaried, at-will employee.  Beginning in fall 2018, Wubbolts, his wife, and his daughter began to have severe health problems caused by – what was later discovered to be – a mold infestation in their home.  As a result, Wubbolts took numerous days off from fall 2018 through spring 2019.

On Friday, May 17, 2019, Wubbolts texted his supervisor: (1) that he would not be in that day because he was at the hospital where his daughter was having a surgical procedure; and (2) "Please don't have [human resources] put me on short term disability or [Family Medical Leave Act] claim as I am coming back next week Monday."  Wubbolts did not return to work the following Monday because his daughter was not discharged from the hospital; doctors kept her for observation.  Wubbolts informed his supervisor.  This continued throughout the week.

Wubbolts returned to work on May 28, 2019.  However, when he arrived, he was given a termination letter effective May 13, 2019, for excess absenteeism.  The letter stated that Wubbolts failed to appear for his shift 27 times since he returned to work on December 21, 2018 –

2

although his supervisor approved all the time off and he continued to receive full pay.

### B.    Wubbolts' Initiates Arbitration

Wubbolts challenged his termination under FCA's Employee Dispute Resolution Process ("EDRP").  Under the EDRP all employment disputes are resolved via binding arbitration.

In Wubbolts' amended demand for arbitration, he alleged five claims: (1) breach of contract; (2) interference with his rights under, and in violation of, the Family Medical Leave Act ("FMLA"); (3) violation of the Employee Retirement Income Security Act ("ERISA"); (4) violation of the Americans with Disabilities Act ("ADA"); and (5) violation of the Persons with Disabilities Civil Rights Act ("PWDCRA").  The parties stipulated to dismissal of the ERISA claim.

The remaining claims were heard before an arbitrator on February 18-19, 2021.  No transcript of the hearing exists.

The parties submitted post-hearing briefs on March 22, 2021.  The American Arbitration Association ("AAA") issued notice that the arbitrator "declared [the hearing] closed . . . on that date."

**C.    The Arbitrator's "Interim Award"**

On April 21, 2021, the arbitrator issued an Interim Award in favor of

Wubbolts on his FMLA and breach of contract claims.  She denied his other

claims.  The arbitrator made the following findings:

- "While the May 24, 2019 letter from FCA supervisor, Richard Thomas, states that the basis for Claimant's termination was 'unauthorized absences,' that conclusion is not supported by the other evidence. Claimant's supervisor, Ron McNeill, confirmed that all of Claimant's absences had been approved by him and Claimant had received full pay for these days (a further indication that absences had been approved by FCA). At the hearing, Mr. Thomas could not identify any of the alleged 27 unapproved absences. Therefore, I find no violation by Claimant of FCA's attendance policies by the alleged absences of Claimant."

- "**It is the obligation of the Employer to provide the notice required under FMLA**. While FCA will undoubtedly argue that Claimant rejected FMLA in his May 17, 2019 email, it is FCA's position that Claimant's employment was terminated on May 13, 2019. Hence, the alleged rejection by Claimant is not meaningful. Therefore, I find that neither FCA or its authorized agent, Sedwick [*sic*], made any effort to accommodate Claimant's and his family's health issues and hence **Claimant suffered a violation of FMLA by FCA**."

- "I find that Respondent **FCA is liable to Claimant for breach of contract (lost wages and benefits) and violation of FMLA**."

- "**Claimant shall be paid for the period between the last day that his prior check covered and up and through the day that his employment at FCA would have continued but for the wrongful conduct discussed herein**."

- "The issue of reinstatement is the subject of a further hearing."

- "The issue of the assessment of attorney fees and costs incurred in connection with this arbitration shall be the subject of a further hearing."

[ECF No. 8-2, PageID.69-70 (emphasis added)].

On July 22, 2021, the arbitrator ordered the parties to disclose their witnesses for the reinstatement and attorney fees hearing by July 26.

On July 26, the arbitrator entered an order cancelling the hearing and requiring FCA to provide evidence of Wubbolts' damages (i.e., his lost wages and benefits).

On September 21, 2021, the AAA issued a letter stating: "the hearings on the final remaining issues in the above-entitled matter were completed on September 20, 2021, and declared closed by the arbitrator on that date. Therefore, the arbitrator shall have 30 days from that date, or until October 20, 2021, to render the Final Award." [ECF No. 19-22].

**D.    The Arbitrator's "Final Award"**

The arbitrator issued a Final Award on October 20.  In it, she reversed her prior ruling that Wubbolts was entitled to recover lost wages; in support of this ruling, she adopted FCA's inaccurate argument that Wubbolts failed to provide financial data evidence supporting his claim for lost wages during the hearing and/or in his post-hearing brief.

Specifically, the Arbitrator found:

5

- After the hearing, "the parties and the Arbitrator discussed scheduling additional hearing days . . ., but the parties could not agree upon a date. In lieu of additional hearing days, the Arbitrator suggested that perhaps the parties should consider providing the information by documents given that the additional information was economic in nature."

- "[FCA] now asserts the position that Claimant was obligated to provide all financial data [in support of his claim for lost wages] as part of his case-in-chief and that no relief should be awarded to Claimant now because of this omission. The record is closed as of today and the Final Award is based upon the evidence furnished without objection to date."

- "The additional information provided by [FCA], under objection, is not considered by the Arbitrator in rendering this decision as Claimant was obligated to provide it in his case-in-chief and he did not."

- "[T]he Claimant [is] reinstated to his prior position or comparable position with [FCA]."

- "**The Claimant is awarded $10,153.54 in costs and attorney fees. . . . All other requested relief is denied and this is a Final Award**."

[ECF No. 8-12 (emphasis added)].

### E.   Wubbolts' Motion for Clarification/Modification of the Final Award

Wubbolts filed a motion for clarification/modification of the Final

Award, arguing that: (1) the Interim Award only left two issues for resolution

at a future hearing – i.e., reinstatement and attorney fees/costs; (2) the

Interim Award did not leave lost wages for resolution through a future

hearing; it found that FCA must pay Wubbolts for the period between the last day that his prior check covered up and through the day that his employment would have continued but for FCA's wrongful conduct; and (3) contrary to the Final Award's conclusion, he did provide evidence of the total amount of his lost wages (i.e., $137,620.12) during his case-in-chief – both during the hearing and in his post-hearing brief.

Wubbolts also requested that the arbitrator amend the Final Award's award of attorney fees from $10,000 to the full amount requested – i.e., $51,264.66.

### F.    The Arbitrator's "Clarification/Modification of Award"

On December 9, 2021, the arbitrator issued a "Disposition for Application of Clarification/Modification of Award" (the "Clarification/ Modification of Award").

In it, the arbitrator: (1) modified the Final Award to include $137,620.12 in lost wages; and (2) denied Wubbolts' request to modify the award of attorney fees.  [ECF No. 19-24].

With respect to the wage loss award, the arbitrator held that Wubbolts demonstrated that the amount of lost wages he outlined in his post-hearing brief (i.e., $137,620.12) was consistent with the proofs he submitted at the hearing.

**G.    This Litigation**

FCA filed suit in Macomb County Circuit Court in January 2022.

Wubbolts removed the case to this Court.

The parties' cross motions are before the Court.

**III.    STANDARD OF REVIEW**

**A.    The Federal Arbitration Act Governs the Review**

The parties disagree whether the Federal Arbitration Act ("FAA"), 9

U.S.C. § 1, *et seq.*, or the Michigan Uniform Arbitration Act ("MUAA"), MCL

§ 691.1681, *et seq.*, governs the Court's review of the arbitration award.

"Although the FAA generally preempts inconsistent state laws and

governs all aspects of arbitrations concerning 'transactions involving

commerce,' parties may agree to abide by state rules of arbitration."

*Savers Prop. & Cas. Ins. Co. v. Nat'l Union Fire Ins. Co.*, 748 F.3d 708, 715

(6th Cir. 2014) (citations omitted).  The central inquiry in the choice of law

determination is whether the parties unambiguously intended to displace

the FAA with state rules of arbitration.  *Id.* at 716.

The EDRP provides that: (1) "The EDRP and proceedings under it

will be governed by the Federal Arbitration Act and any applicable state

arbitration statute"; and (2) "The decision of the Arbitrator shall be final and

binding. However, limited judicial review may be obtained in a federal

8

district court or state court in accordance with the legal standards for review of arbitration awards."  [ECF No. 19-6, PageID.523].

The EDRP is ambiguous and insufficient to establish that the parties unambiguously intended to displace the FAA with Michigan law.  *See Martis v. Dish Network Serv., LLC*, 597 Fed. Appx. 301, 304 (6th Cir. 2015) (holding that an arbitration agreement did "not unambiguously express an intent to displace the federal standard with Michigan law because it state[d] that it is governed by both the FAA and Michigan's substantive law").  The Court resolves ambiguities "in favor of the federal standard."  *Id.*

The Court resolves the ambiguous contract in favor of the FAA. *See id*.; *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 303 (6th Cir. 2008) (concluding that, where the choice of law provision mentioned both the FAA and Michigan law, the FAA governed review of the arbitration award).

### B.    Standard of Review under the FAA

Review of an arbitrator's decision is "very narrow; it is one of the narrowest standards of judicial review in all of American jurisprudence." *Uhl*, 512 F.3d at 305.  The FAA presumes that arbitration awards will be confirmed.  *Id.*  Under § 9 of the FAA, the Court "'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as

prescribed' in §§ 10 and 11." *Hall St. Assocs. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008).

Section 10 sets forth the statutory grounds to vacate an award.  They are: (1) where the award was procured by corruption, fraud, or undue means; (2) where the arbitrator evidenced partiality or corruption; (3) where the arbitrator's misconduct or misbehavior prejudiced the rights of a party; and (4) where the arbitrator exceeded her powers, or so imperfectly executed them that a final, definite award was not made.  9 U.S.C. § 10(a)(1)-(4).

In addition to the statutory grounds, the Sixth Circuit recognizes "a separate judicially created basis" for vacating an arbitration award where the arbitrator made the award "in manifest disregard of the law." *Gunasekera v. War Mem'l Hosp., Inc.*, 841 Fed. Appx. 843, 846 (6th Cir. 2021); *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000).  While technically a separate ground, the "[manifest disregard of the law] test . . . is part and parcel of the statutory prohibition against the arbitrators 'exceeding their powers,' because 'arbitrators do not exceed their authority unless they display a manifest disregard of the law.'"  *In re Romanzi*, 31 F.4th 367, 375 (6th Cir. 2022) (citation omitted).

FCA argues that the arbitrator exceeded her authority and/or manifestly disregarded the law.  Therefore, the Court need not discuss the first three grounds in § 10.

The burden to prove that an arbitrator "exceeded [her] authority" is "very great."  *Solvay Pharms., Inc. v. Duramed Pharms., Inc.*, 442 F.3d 471, 476 (6th Cir. 2006).  "It is not enough to show that the arbitrator committed an error—or even a serious error."  *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) (citation omitted).  "Because the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits."  *Id.* (citation omitted).  The Court may only overturn an award if "the arbitrator acts outside the scope of his contractually delegated authority—issuing an award that simply reflects his own notions of economic justice rather than drawing its essence from the contract."  *Id.* (citation and quotation marks omitted).

"[T]he sole question for [the Court] is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong."  *Id.*; *Solvay Pharms.*, 442 F.3d at 476 ("Courts must refrain from reversing an arbitrator simply because the court disagrees with the result or believes the arbitrator made a serious *legal* or factual error.").

The scope of the basis to vacate an arbitration award based on manifest disregard of the law is "very narrow." *Schafer v. Multiband Corp.*, 551 Fed. Appx. 814, 820 (6th Cir. 2014).  An arbitrator does not act in manifest disregard of the law unless: (1) an "applicable legal principle is clearly defined and not subject to reasonable debate"; and (2) the arbitrator "consciously chose[] not to apply [that legal principle]." *Dawahare*, 210 F.3d at 669.  To show manifest disregard, a party "must show more than 'a mere error in interpretation or application of the law'"; it must also present "evidence that the arbitrator[] w[as] ***aware of some relevant law*** . . . that [she] ***chose to ignore***."  *Id.* at 671 (emphasis added).

Demonstrating that an arbitrator knew of and consciously chose to ignore applicable law is difficult; this is especially true because "[a]rbitrators are not required to explain their decisions."  *Id.* at 669.  Indeed, if an arbitrator chooses not to explain her decision, "***it is all but impossible to determine whether [she] acted with manifest disregard for the law***." *Id.* (emphasis added).

## IV.   DISCUSSION

FCA argues that the arbitrator exceeded her authority under the parties' arbitration agreement and acted in manifest disregard of the law in

five different ways.  The Court addresses each argument.  However, before doing so, it is necessary to highlight relevant terms in the EDRP.

### A.    Relevant Terms of the EDRP

Except where they conflict with the terms of the EDRP, the AAA Rules govern arbitrations under the EDRP.

The EDRP provides that "[t]he Arbitrator's authority is limited to deciding whether the challenged personnel decision or action was (1) lawful under applicable federal, state and local law, or (2) consistent with the Company's At Will employment policy."  [ECF No. 19-6, PageID.522]. "In reaching a decision, the Arbitrator will interpret, apply and be bound by any applicable Company policies and procedures and by applicable federal, state or local law."  [*Id*.].

The arbitrator has no authority to: "(1) add to, detract from, or otherwise modify any law, policy or procedure in any respect, (2) decide any matters that are within the sole discretion of the Company in the management and conduct of its business, or (3) decide any dispute that is based upon a claim that an employee is eligible to receive benefits under any Company employee benefit plan or fringe benefit program."  [*Id*.].

**B.    FCA's First Argument: The Arbitrator Exceeded Her Authority by Modifying the FMLA to Permit an Award of Damages Where it is Undisputed Wubbolts Received More Leave than Required by the Act**

FCA says the arbitrator exceeded her authority under the EDRP, and demonstrated a manifest disregard for the law, by: (1) adding to, detracting from, or modifying the FMLA to permit an award of damages where FCA provided Wubbolts with the required amount of FMLA leave; and (2) awarding damages for a technical violation of the FMLA.  Specifically, FCA argues that even if Wubbolts was not entitled to the time, and even though FCA did not designate it as such, Wubbolts took time off far in excess of what he was entitled to and was paid for it.  FCA says the amount of time off permitted by statute is clearly defined and not subject to debate, and the arbitrator disregarded clear law.

FCA bases this argument on its statement that Wubbolts received 16 weeks of paid leave in 2019, which is more than the 12 weeks of unpaid leave he was entitled to under the FMLA.

FCA relies on *Banks v. Bosch Rexroth Corp.*, 610 Fed. Appx. 519 (6th Cir. 2015), where the Sixth Circuit affirmed summary judgment in favor of an employer when it found that because the employer gave plaintiff "all of the leave required under the FMLA plus over 100 additional hours," she

14

could not show she suffered harm resulting from the employer's technical violation for failing to designate all her leave time as FMLA leave. *Id.* at 524-25.

However, unlike *Banks*, the arbitrator did not find that FCA gave Wubbolts all of the leave required under the FMLA.  In fact, the amount of FMLA leave Wubbolts received is not entirely clear.

Unfortunately, the arbitrator did not explain the basis of her decision finding FCA liable for violation of the FMLA.  This makes it "all but impossible" to determine whether she acted with manifest disregard for the law.  *See, supra, Dawahare*, 210 F.3d at 669 (holding that it is "all but impossible to determine whether [an arbitrator] acted with manifest disregard for the law" where the arbitrator did not explain her decision).

However, the arbitrator notes that "[i]t is the obligation of the Employer to provide the notice required under FMLA."  This refers to an employer's obligation to notify an employee of how it designated particular time off, so the employee is aware of how much FMLA leave he has remaining.

In *Banks*, the Sixth Circuit found that the plaintiff could not show she suffered harm from the employer's technical violation of failing to designate all of her leave time as FMLA leave; however, the court also held that there

15

were "several scenarios in which an employee could show prejudice even after having exhausted her FMLA-allotted leave hours."  *Banks*, 610 Fed. Appx. at 525.  For example, the Sixth Circuit explained that:

> **The regulations governing implementation of the FMLA also indicate that it is easier to show prejudice after exhaustion of leave when the leave was taken to care for another person rather than oneself**. See 29 C.F.R. § 825.301(e). If the employee uses the leave herself, we presume she needed to do so and it is less likely that she would not have taken the leave had the employer designated it properly. *Id*. **If the employee used the leave to care for another, however, it is reasonable to argue that had the leave been correctly designated, she would have found someone else to care for that sick person so she could save her leave for future use.**

*Banks*, 610 Fed. Appx. at 525 (emphasis added).

Much of the time Wubbolts took off was to care for his wife and child. Therefore, it is plausible that he could show the prejudice necessary to recover under the FMLA for FCA's alleged failure to properly designate his leave and/or failure to provide him notice of his remaining FMLA leave entitlement. *See id.*

Considering the unclear evidence regarding the amount of FMLA leave Wubbolts' received between January 15, 2019 (i.e., the day FCA says Wubbolts exhausted his personal time off ("PTO") allocation for the year) and May 13, 2019 (i.e., the date of Wubbolts' termination), the arbitrator's failure to make detailed findings, and the fact that Wubbolts

16

used much of his leave to care for others, the Court finds that FCA fails to demonstrate that the arbitrator acted in manifest disregard of the law in finding FCA violated the FMLA.  *See Dawahare*, 210 F.3d at 669.

Moreover, even if the arbitrator made an error of law, FCA does not show it was anything beyond a "mere error in interpretation or application of the law" – which is insufficient to satisfy this narrow standard of review.  *Id.* at 671.  Indeed, FCA fails to identify evidence that the arbitrator was aware of a relevant law that she consciously chose to ignore.  *See In re Romanzi*, 31 F.4th 367, 375-76 (6th Cir. 2022) ("But the Firm's failure to identify any 'evidence that the arbitrators were aware of some relevant law that they chose to ignore' is fatal to its claim." (citing *Dawahare*, 210 F.3d at 671)).

## C.    FCA's Second Argument: The Arbitrator Exceeded Her Authority by Imposing a Duty to Accommodate Under the FMLA Where None Exists

FCA says the arbitrator exceeded her authority under the EDRP and acted in manifest disregard of the law by adding to or otherwise modifying the FMLA to impose a duty to accommodate.  This refers to the arbitrator's finding that "neither FCA or its authorized agent, Sedwick [*sic*], made any effort to accommodate Claimant's and his family's health issues and hence Claimant suffered a violation of FMLA by FCA."

Wubbolts says that: (1) this was merely a mischaracterization of terminology by the arbitrator; and (2) even if the arbitrator engaged in clear legal error, that in and of itself is not sufficient for vacatur of the award.  The Court agrees with Wubbolts.

As stated above, the arbitrator failed to explain the basis of her award – making it difficult to meaningfully review.  However, even if the arbitrator made an error of law, FCA fails to present evidence that she knew the relevant law **and** *consciously chose* to ignore it.  Mere error in interpretation or application of the law is insufficient for vacatur of an award. *See In re Romanzi*, 31 F.4th at 375-76; *Dawahare*, 210 F.3d at 671.

### D. FCA's Third Argument: The Arbitrator Exceeded Her Authority by Extending the FMLA's Protections to Absences Beyond Twelve Weeks

FCA says the arbitrator exceeded her authority under the EDRP and acted in manifest disregard of the law by extending the FMLA's protections to absences beyond 12 weeks.  FCA says it allowed Wubbolts 16 weeks of leave before it terminated him.

This argument fails for the same reasons as the prior arguments.

The arbitrator never made a finding concerning the number of weeks of leave Wubbolts received, and the evidence was unclear on this.

18

Additionally, because the arbitrator failed to explain the basis of the award, the premise of this argument (i.e., that the arbitrator extended the protections of the FMLA to absences beyond 12 weeks) fails.

Finally, even if the arbitrator made an error of law, FCA fails to present evidence that she consciously chose to ignore relevant law. Therefore, FCA fails to show the arbitrator displayed a manifest disregard of the law as opposed to making an error in interpretation or application of the law. *See In re Romanzi*, 31 F.4th at 375-76; *Dawahare*, 210 F.3d at 671.

### E.     FCA's Fourth Argument: The Arbitrator Exceeded Her Authority By Modifying FCA's Employment At-Will Policy to Include a Contractual Obligation to Provide Lost Wages and Benefits

FCA says that because it hired Wubbolts as an at-will employee, the arbitrator had to find one of the following to find it liable on Wubbolts' breach of contract claim: "(1) proof of a contractual provision for a definite term of employment or a provision forbidding discharge absent just cause; (2) an express agreement, either written or oral, regarding job security that is clear and unequivocal; or (3) a contractual provision, implied at law, where an employer's policies and procedures instill a legitimate expectation of job security in the employee." *Lytle v. Malady*, 458 Mich. 153, 164 (1998) (citations and internal quotation marks omitted).

19

FCA says the arbitrator relied on FCA's disability leave process – which a supervisor copied-and-pasted into an email to Wubbolts – as evidence of a contractual right to take time off work and/or policy which instilled a legitimate expectation of job security.

Wubbolts says FCA fails to show that the arbitrator acted with manifest disregard for the law – even if she made a clear error of law.  He relies on *Schafer*, in which the Sixth Circuit explained that:

> Legal error by the arbitrator—even clear legal error—is however not by itself sufficient for vacatur of an arbitration agreement. One of the advantages of arbitration is the avoidance of the expense of appeals, and the avoidance of such costs would be undermined by permitting appeals based on clear error of law. Even assuming that manifest disregard of the law is a basis for vacatur of an arbitral decision, the scope of the basis has to be *very narrow*. ***Manifest disregard of the law is not just manifest error of law***. If the arbitrator expressed disagreement with the law, rather than interpretation of the law, that might suggest "disregard."

*Schafer*, 551 Fed. Appx. at 820 (emphasis added).

Like in *Schafer*, the arbitrator's conclusion here "appears to be legally unsupportable under [relevant] precedents, such that [the Sixth Circuit] would reverse the decision if it had been made by a district court."  *Id.* at 819.  However, the scope of review is "very narrow" and requires showing that the arbitrator *was aware of clearly defined legal precedent* **and** *consciously chose to ignore it*.  *In re Romanzi*, 31 F.4th at 375-76.

20

Like above, the arbitrator's failure to explain her decision makes it "all but impossible to determine whether [she] acted with manifest disregard for the law." *Dawahare*, 210 F.3d at 669. Indeed, while FCA demonstrates that the arbitrator likely made a manifest *error* of law, it fails to show that she acted with a manifest *disregard* for the law because it does not show the arbitrator (1) *actually knew* of relevant precedent, **and** (2) *consciously chose to ignore* it. This is fatal to its claim. *Id.*

### F. FCA's Fifth Argument: The Arbitrator Exceeded Her Authority By Modifying Her Final Award To Include Economic Damages

FCA's last argument is that the arbitrator exceeded her authority under the EDRP and the AAA Rules by issuing an order modifying the Final Award to award additional damages.

In relevant part, AAA Rule 40 provides:

> Within 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator, through the AAA, to correct any clerical, typographical, technical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided.

FCA says the arbitrator violated Rule 40 by entering the Clarification/Modification of Award because she reversed her holding in the Final Award that Wubbolts failed to meet his burden to show lost wages. FCA says this

was an unauthorized reconsideration of the merits, not a simple correction of a typographical error. The Court disagrees.

If anything, the arbitrator exceeded her authority under Rule 40 when she held in the Final Order that Wubbolts was no longer entitled to lost wages. As Wubbolts points out, the only outstanding matters following the Interim Award were the issue of his reinstatement and his entitlement to attorney fees/expenses. The award of lost wages in the Interim Award was final, and Wubbolts did provide evidence of his lost wages in his case-in-chief (i.e., at the hearing and/or in his post-hearing brief). Thus, the arbitrator lacked power to redetermine the issue.

Although the arbitrator did not explain why she was allowed to enter the Clarification/Modification of Award, her conclusion that she had the authority to modify the Final Award is reasonable and supportable. It must stand. *See Oxford Health*, 569 U.S. at 569 ("[A]n arbitral decision even arguably construing or applying the contract must stand, regardless of a court's views of its (de)merits." (internal quotation marks and citation omitted)).

Rule 40 allows an arbitrator to correct "technical" errors. Because the AAA Rules do not define "technical," it was within the authority of the arbitrator to construe the term. *Commc'ns Workers of Am., AFL-CIO v. Sw.*

*Bell Tel. Co.*, 953 F.3d 822, 827 (5th Cir. 2020) ("[I]t 'is the arbitrator's charge' to 'explicate broad CBA terms when left undefined by the contract.'" (citation omitted)).

The scenario presented fits within the scope of a technical correction. The arbitrator first concluded that FCA was liable to Wubbolts for lost wages. She then committed an error by reversing that conclusion in the Final Award. Because the earlier decision on the merits was final, the Clarification/Modification of Award was merely to fix a technical mistake.

The arbitrator did not exceed her authority.

## V. CONCLUSION

The Court **GRANTS** Wubbolts' motion to confirm the arbitration award [ECF No. 14] and **DENIES** FCA's motion to vacate the award [ECF No. 8].

Consistent with the Arbitrator's Interim Award, Final Award, and Clarification/Modification of Award, the Court ORDERS that: (1) FCA is liable to Wubbolts for breach of contract and for violation of the FMLA; (2) FCA owes Wubbolts $137,620.12 for lost wages; (3) FCA must reinstate Wubbolts to his prior position or a comparable position with FCA; and (4) FCA owes Wubbolts $10,153.54 for attorney fees and costs.

The Court will enter a separate Judgment consistent with this Order.

**IT IS ORDERED**.

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  January 25, 2023